# EXHIBIT A

COMPASS

**RESIDENTIAL SALES CONTRACT (Virginia)** ***This form may only be used by REALTORS® and others as authorized by NVAR. All other use is prohibited.***

This sales contract ("Contract") is offered on September 14, 2026 ("Date of Offer") between **Ahmed Mohamed Mostafa Mohamed Elagazy** and **H. Jason Gold, Trustee** ("Buyer") ("Seller") collectively referred to as "Parties", who, among other things, hereby confirm and acknowledge by their initials and signatures herein that by prior disclosure in this real estate transaction **CENTURY 21 New Millennium** ("Listing Brokerage") represents Seller, and **Compass** ("Buyer's Brokerage") represents Buyer. The Listing Brokerage and Buyer's Brokerage are collectively referred to as "Broker." In consideration of the mutual promises and covenants set forth below, and other good and valuable consideration the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

1. **REAL PROPERTY.** Buyer will buy and Seller will sell for the sales price in Paragraph 2(A) below ("Sales Price") Seller's entire interest in the real property (with all improvements, rights and appurtenances) described as follows ("Property"): **A.** Tax Map/ID # **0931 23E 0022** Legal Description: Lot(s)________
   Section ______ Subdivision or Condominium **BUCKNELL MANOR**
   County/Municipality **FAIRFAX-VA**
   Deed Book/Liber # ________ Page/Folio # ________
   Street Address **6528 Cavalier Dr**
   Unit # ______ City **Alexandria** ZIP Code **22307**

   **B.** Parking and Storage:
   1. Parking:
      i. Limited Common Element:
         Assigned parking ID[s]#______, ______ , ______
         Unassigned Number of Spaces____:
      And/Or
         Fee simple: parking space[s]ID #______ and Tax ID[s] # ________
   2. Storage:
      i. Assigned Limited Common Element: storage unit ID [s]#___

   eSign AMM eSign ME HJGT

**2. PRICE AND FINANCING.** (Any % are percentages of Sales Price)

| | | |
|---|---|---|
| **A. Sales Price.** | $ ~~500,000.00~~ $575,000.00 | |
| **B. Down Payment** (If no financing, Down Payment equals Sales Price). | $______ | or %____ |
| **C. Financing.** | | |
| 1. First Trust (if applicable) | $______ | or %____ |
| ☐ **Conventional** ☐**VA** ☐**FHA** ☐**USDA** | | |
| ☐ **VA Assumption** ☒ **Other:** **Cash** | | |
| 2. Second Trust (if applicable) | $______ | or %____ |
| 3. Seller Held Trust (if applicable) | $______ | or %____ |
| **TOTAL FINANCING** | $______ | or %____ |

**D. "Seller Subsidy" to Buyer.** Seller's net reduced by: $______ or %____

**E. Seller Payment towards Buyer's Brokerage Compensation.**
Seller's net reduced by: $______ or % **2.500**

This obligation is enforceable by Buyer's Brokerage against Seller and may be modified only by subsequent written agreement by Buyer's Brokerage.

**F. Financing Contingency.** Contract ☐ **is contingent** (addendum attached) **OR** ☒ **is not contingent** on financing. If Contract is contingent on financing: (i) Buyer will make written application for the financing and any lender-required property insurance no later than seven (7) days after Date of Ratification; and (ii) Buyer grants permission for Buyer's Brokerage and the lender to disclose to Listing Brokerage and Seller general information available about the progress of the loan application and loan approval process.

**G. Appraisal Contingency.** Contract ☐ **is contingent** (addendum attached) **OR** ☒ **is not contingent** on Appraisal. If Contract is contingent on financing and/or Appraisal, Seller will provide Appraiser(s) reasonable access to Property for Appraisal purposes. If Contract is not contingent on financing and/or Appraisal; Seller ☒ **will OR** ☐ **will not** provide Appraiser(s) reasonable access for Appraisal purposes. If Contract is not contingent on Appraisal, Buyer will proceed to Settlement without regard to Appraisal. Seller and Buyer authorize Broker to release Sales Price to Appraiser(s) who contacts them to obtain the information. Nothing in this subparagraph creates a financing contingency not otherwise agreed to by the Parties.

**H. Buyer's Representations.** Buyer ☒ **will OR** ☐ **will not** occupy Property as Buyer's principal residence. **Unless specified in a written contingency, neither Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property.** Buyer acknowledges that Seller is relying upon Buyer's representations, including without limitation, the accuracy of financial or credit information given to Seller, Broker, or the lender by Buyer.

**3. DEPOSIT.** Buyer's deposit ("Deposit") in the amount of ☒ $ **8,000.00** check/bank-wired funds; and/or ☐ $ ____________ by note due payable on ______________ will be held in escrow by the following Escrow Agent: ☒ Settlement Agent **OR** ☐ Buyer's Brokerage **OR** ☐ Other:____________________. Buyer ☐ **has delivered** Deposit to Escrow Agent **OR** ☒ **will deliver** Deposit to Escrow Agent by **3** Business Days after Date of Ratification. If Buyer fails to timely deliver Deposit to Escrow Agent as provided herein, Seller may at Seller's option Deliver to Buyer Notice Voiding Contract. Upon Delivery of Seller Notice Voiding Contract, all respective rights and obligations of the Parties arising under Contract will terminate. Buyer may cure Default by Delivering Deposit to Escrow Agent prior to Seller Delivery of Notice Voiding Contract.

Deposit will be deposited by Escrow Agent into an escrow account in accordance with applicable state and federal law. This account may be interest bearing and all Parties waive any claim to interest resulting from Deposit. Deposit will be held in escrow until: (i) credited toward Sales Price at Settlement; (ii) all Parties have agreed in writing as to its disposition; (iii) a court of competent jurisdiction orders disbursement and all appeal periods have expired; or (iv) disposed of in any other manner authorized by law. Seller and Buyer agree that no Escrow Agent will have any liability to any party on account of disbursement of Deposit or on account of failure to disburse Deposit, except in the event of Escrow Agent's gross negligence or willful misconduct.
Seller and Buyer further agree that Escrow Agent will not be liable for the failure of any depository in which Deposit is placed and that Seller and Buyer each will indemnify, defend and save harmless Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse Deposit, except in the case of Escrow Agent's gross negligence or willful misconduct. HJGT

**4. SETTLEMENT.** Seller and Buyer will make full settlement in accordance with the terms of Contract on, or with mutual consent before, **3 weeks from ratification** ("Settlement Date") except as otherwise provided in Contract. If Settlement Date falls on a day other than a Business Day, then Settlement will be on the prior Business Day.

10/20/2026 or within 20 days of Bankruptcy Court Approval AMM MEE

**NOTICE TO BUYER REGARDING THE REAL ESTATE SETTLEMENT AGENTS ACT ("RESAA") Choice of Settlement Agent: Chapter 10 (§ 55.1-1000, *et seq.*) of Title 51 of the Code of Virginia ("RESAA") provides that the purchaser or the borrower has the right to select the settlement agent to handle the closing of this transaction. The settlement agent's role in closing this transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the Parties. If part of the purchase price is financed, the lender for the purchaser will instruct the settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No settlement agent can provide legal advice to any party to the transaction except a settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party. No settlement agent may collect any fees from a represented seller payable to the settlement agent or its subsidiaries, affiliates, or subcontractors without first obtaining the written consent of the seller's counsel.**

**Variation by agreement: The provisions of the RESAA may not be varied by agreement, and rights conferred by this chapter may not be waived. The seller may not require the use of a particular settlement agent as a condition of the sale of the property.**
**Escrow, closing and settlement service guidelines: The Virginia State Bar issues guidelines to help settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, settlement, or closing services. As a party to a real estate transaction, the purchaser or borrower is entitled to receive a copy of these guidelines from their settlement agent, upon request, in accordance with the provisions of the RESAA.** HJGT

AMM ME

**BUYER'S NOTICE TO SELLER.** Buyer designates RL Title & Escrow ("Settlement Agent"). Buyer agrees to contact Settlement Agent within ten (10) Days of Date of Ratification to schedule Settlement. Settlement Agent will order the title exam and survey if required. Pursuant to Virginia law, Settlement Agent is the sole agent responsible for conducting the Settlement as defined in Virginia Code § 55.1-900, *et seq.* Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

To facilitate Settlement Agent's preparation of various closing documents, including any Closing Disclosure, Buyer hereby authorizes Settlement Agent to send such Closing Disclosure to Buyer by electronic means and agrees to provide Settlement Agent with Buyer's electronic mail address for that purpose only.

5. **DOWN PAYMENT.** Down Payment will be paid on or before Settlement Date by certified or cashier's check or by bank-wired funds as required by Settlement Agent. An assignment of funds will not be used without prior written consent of Seller.

6. **DELIVERY.** This paragraph specifies the general delivery requirements under Contract. For delivery of property or condominium owner's association documents, delivery may be to Buyer as set forth below **OR** to Buyer's agent. Delivery ("Delivery," "delivery," or "delivered") methods may include hand-carried, sent by professional courier service, by United States mail, by facsimile, or email transmission. The Parties agree that Delivery will be deemed to have occurred on the day: delivered by hand, delivered by a professional courier service (including overnight delivery service) or by United States mail with return receipt requested, or sent by facsimile or email transmission, either of which produces a tangible record of the transmission.



Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 6528 Cavalier Dr,

Deliveries will be sent as follows:

A. Addressed to Seller **at Property address unless otherwise specified below** by ☐United States mail, hand delivery or courier service **OR** ☐fax **OR** ☐X email (check all that apply): To Seller: **stephanie@realmarkets.com; robert@realmarkets.com** Page 4 of 11

B. Addressed to Buyer by ☐United States mail, hand delivery or courier service, **OR** ☐fax, **OR** ☐ email (check all that apply): To Buyer: **[illegible]@compass.com; contracts@babbingtoninc.com**

No party to Contract will refuse Delivery in order to delay or extend any deadline established in Contract.

7. **VIRGINIA RESIDENTIAL PROPERTY DISCLOSURE ACT.** The Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the Code of Virginia) requires Seller to deliver a disclosure statement prior to the acceptance of Contract unless the transfer of Property is exempt. The law requires Seller, on a disclosure statement provided by the Real Estate Board, to state that Seller makes no representations or warranties concerning the physical condition of the Property and to sell the Property "as is," except as otherwise provided in Contract.

8. **VIRGINIA RESALE DISCLOSURE ACT.** Seller represents that the Property ☐is **OR** ☐X is not located within a development that is subject to the Virginia Property Owners' Association Act ("POAA"). Seller represents that the Property ☐is **OR** ☐X is not located within a development that is subject to the Virginia Condominium Act ("Condo Act"). Section §55.1-2308 of the Resale Disclosure Act requires the following contract language: Subject to the provisions of §55.1-2317, any contract for the resale of a unit in a common interest community shall disclose that (i) the unit is located in a common interest community; (ii) the seller or seller's agent is required to obtain from the association a resale certificate and provide it to the purchaser or purchaser's agent; (iii) the purchaser has the right to cancel the contract pursuant to §55.1-2312; (iv) the purchaser or purchaser's agent has the right to request an update of such resale certificate in accordance with §55.1-2311; and (v) the right to receive the resale certificate and the right to cancel the contract are waived conclusively if not exercised before settlement. The provisions of §55.1-2312 allow for Buyer cancellation of Contract under the following circumstances: (i) until 9 p.m. _____ Days after Date of Ratification if Seller or Seller's Brokerage delivers the resale certificate to Buyer or Buyer's agent, whether or not complete, or a notice that the resale certificate is unavailable **before** Date of Ratification (*if timeframe is left blank, it defaults to 3 Days after Date of Ratification*); (ii) until 9 p.m. _____ Days after the date Seller or Seller's Brokerage delivers the resale certificate to Buyer or Buyer's agent, whether or not complete, or a notice that the resale certificate is unavailable if delivery occurs **on or after** Date of Ratification (*if timeframe is left blank, it defaults to 3 Days after receipt*); **OR** (iii) at any time prior to settlement if the resale certificate is not delivered to Buyer or Buyer's agent. If the unit is governed by more than one association, the timeframe for Buyer's right of cancellation shall run from the date of delivery of the last resale certificate. For more information, see K1390 – Understanding Your Rights Under the Resale Disclosure Act.

9. **PROPERTY MAINTENANCE AND CONDITION; INSPECTIONS.** Except as otherwise specified herein, Seller will deliver Property free and clear of trash and debris, broom clean and in substantially the same physical condition to be determined as of ☒ **Date of Offer OR** ☐ **Date of home inspection OR** ☐ Other: ________ (if no date is selected, then Date of Offer). Seller will have all utilities in service through Settlement. Buyer and Seller will not hold Broker liable for any breach

of this Paragraph. Buyer acknowledges that except as otherwise specified in Contract, Property, including electrical, plumbing, existing appliances, heating, air conditioning, equipment and fixtures will convey in its AS-IS condition as of the date specified above.

☐ Contract is contingent upon home inspection(s) and/or other inspections of Property. (Addendum attached); **OR**

☒ Buyer waives the opportunity to make Contract contingent upon home inspection(s) and/or other inspections of Property.

If Contract is contingent upon home inspection(s) and/or other inspections of Property, Seller will provide Broker, Buyer, and inspector(s) retained by Buyer reasonable access to Property to conduct home inspection(s) and/or other inspection(s) of Property.

If Contract is not contingent upon home inspection(s) and/or other inspections of Property **Seller will not provide access** to anyone for the purpose of conducting inspection(s) except for final walkthrough(s) as provided below**. However, if checked ☐Seller will** provide Broker, Buyer, and licensed (if applicable), professional, insured inspector(s) retained by Buyer reasonable access to Property to conduct home inspection(s) and/or other inspection(s) of Property beginning on and ending on . Nothing in this subparagraph creates a contingency not otherwise agreed to by the Parties**.**

Regardless of whether Contract is contingent upon home inspection(s) and/or other inspections, Seller will provide Broker and Buyer reasonable access to Property to make final walkthrough(s) within seven (7) days prior to Settlement or occupancy, whichever occurs first.

**10. POSSESSION DATE.** Unless otherwise agreed to in writing between Seller and Buyer, Seller will give possession of Property at Settlement, including delivery of keys, mailbox keys, key fobs, codes, digital keys, if any. Seller will transfer exclusive control of any Smart Devices to Buyer at Settlement. If Seller fails to do so and occupies Property beyond Settlement, Seller will be a tenant at sufferance of Buyer and hereby expressly waives all notice to quit as provided by law. Buyer will have the right to proceed by any legal means available to obtain possession of Property. Seller will pay any damages and costs incurred by Buyer including reasonable attorney fees.

**11. UTILITIES; MAJOR SYSTEMS.** (Check all that apply)

| | | | | |
|---|---|---|---|---|
| Water Supply: | ☐**X** Public | ☐ Private Well | ☐Community Well | |
| Hot Water: | ☐ Oil | ☐**X** Gas | ☐Elec. | ☐Other ________ |
| Air Conditioning: | ☐ Oil | ☐ Gas | ☐**X** Elec. | ☐Heat Pump ☐Other ☐Zones ____ |
| Heating: | ☐ Oil | ☐**X** Gas | ☐Elec. | ☐Heat Pump ☐Other ☐Zones ____ |
| Sewage Disposal: | ☐**X** Public | ☐ Septic for # BR____ | ☐Community Septic | ☐Alternative Septic for # BR: ____ |

Septic Waiver Disclosure provided by Seller (if applicable) per VA Code §32.1-164.1:1. State Board of Health septic system waivers are not transferable.

**12. PERSONAL PROPERTY AND FIXTURES.** Property includes the following personal property and fixtures, if existing: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, indoor and outdoor sprinkler systems, bathroom mirrors, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, window treatment hardware, smoke and heat detectors, antennas, exterior trees, and shrubs. Smart home devices installed, hardwired or attached to personal property or fixtures conveyed pursuant to this paragraph, including but not limited to, smart switches, smart thermostats, smart doorbells, and security cameras ("Smart Devices") **DO** convey. Electric vehicle charging stations **DO** convey. Solar panels installed on the Property **DO** convey (see attached Addendum). All surface or wall mounted electronic components/devices **DO NOT** convey; however, all related mounts, brackets and hardware **DO** convey. If more than one of an item conveys, the number of items is noted.


Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

**The items marked YES below are currently installed or offered and will convey.**

| Yes | # | Items | Yes | # | Items | Yes | # | Items |
|---|---|---|---|---|---|---|---|---|
| ☐ | ___ | Alarm System | ☐ | ___ | Freezer | ☐ | ___ | Satellite Dish |
| ☐X | ___ | Built-in Microwave | ☐ | ___ | Furnace Humidifier | ☐X | | Stove or Range |
| ☐X | all | Ceiling Fan | ☐X | | Garage Opener | ☐X | ___ | Storage Shed |
| ☐ | ___ | Central Vacuum | ☐ | ___ | w/ remote | ☐ | ___ | Wall Oven |
| ☐ | ___ | Clothes Dryer | ☐ | ___ | Gas Log | ☐ | ___ | Water Treatment System |
| ☐ | ___ | Clothes Washer | ☐X | ___ | Hot Tub, Equip & Cover | ☐ | ___ | Window A/C Unit |
| ☐ | ___ | Cooktop | ☐ | ___ | Intercom | ☐ | ___ | Window Fan |
| ☐X | ___ | Dishwasher | ☐ | ___ | Playground Equip | ☐ | ___ | Window Treatments |
| ☐ | ___ | Disposer | ☐ | ___ | Pool, Equip, & Cover | ☐ | ___ | Wood Stove |
| ☐ | ___ | Electronic Air Filter | ☐X | ___ | Refrigerator | | | |
| ☐ | ___ | Fireplace Screen/Door | ☒ | ___ | w/ ice maker | | | |

**OTHER CONVEYANCES (as-is, no added value and for Seller convenience)** Fireplace, Exhaust Fan, Screens, Shades/Blinds,

___________________________________________

**DOES NOT CONVEY** ___________________________________________

___________________________________________

**FUEL TANKS.** ☐ Fuel Tank(s) Leased #________ **OR** ☐ Fuel Tank(s) Owned (Fuel Tank(s), if owned, convey) #_____. Unless otherwise agreed to in writing, any heating or cooking fuels remaining in supply tank(s) at Settlement will become the property of Buyer.

**LEASED ITEMS.** Any leased items, systems or service contracts (including, but not limited to, fuel tanks, water treatment systems, lawn contracts, security system monitoring, and satellite contracts) **DO NOT** convey absent an express written agreement by Buyer and Seller. The following is a list of the leased items within Property: ___________________________________________

___________________________________________

**13. IRS/FIRPTA – WITHHOLDING TAXES FOR FOREIGN SELLER.** Seller ☐**is OR** ☐X **is not** a "Foreign Person," as defined by the Foreign Investment in Real Property Tax Act (FIRPTA). If Seller is a Foreign Person, Buyer may be required to withhold and pay to the Internal Revenue Service (IRS) up to fifteen percent (15%) of the Sales Price on behalf of the Seller and file an IRS form which includes both Seller and Buyer tax identification numbers. The Parties agree to cooperate with each other and Settlement Agent to effectuate the legal requirements. If Seller's proceeds are not sufficient to cover the withholding obligations under FIRPTA, Seller may be required to pay at Settlement such additional certified funds necessary for the purpose of making such withholding payment.

HJGT AMM MF

Buyer **14. SMOKE DETECTORS.** Seller will deliver Property with smoke detectors installed and functioning in accordance with ~~the~~ laws and regulations of Virginia.

**15. TARGET LEAD-BASED PAINT HOUSING.** Seller represents that any residential dwellings at Property x☐**were OR** ☐**were not** constructed before 1978. If the dwellings were constructed before 1978, then, unless exempt under 42 U.S.C. §4852d, Property is considered "target housing" under the statute and a copy of the "Sale: Disclosure and Acknowledgment of Information on Lead-Based Paint and/or Lead-Based Paint Hazards" has been attached and made a part of the Contract as required by law. Buyer ☐**does OR** ☐**does not** waive the right to a risk assessment or inspection of Property for the presence of lead-based paint and/or lead-based paint hazards. If not, a copy of the Sales Contract Addendum for Lead-Based Paint Testing is attached to establish the conditions for a lead-based paint risk assessment or inspections.



Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 6528 Cavalier Dr,

**16. WOOD-DESTROYING INSECT INSPECTION.** ☐**None** ☐X **Buyer at Buyer's expense OR** ☒ **Seller at Seller's expense** will furnish a written report from a licensed pest control firm dated not more than 90 days prior to Settlement ("WDI Report") showing that all dwelling(s) and/or garage(s) within Property (excluding fences or shrubs not abutting garage(s) or dwelling(s)) are free of visible evidence of live wood-destroying insects and free from visible damage. Seller will provide Buyer, Broker and any representatives of the licensed pest control firm selected by the appropriate party above reasonable access to the Property to perform wood-destroying insect inspection(s). Any treatment for live wood-destroying insects and/or repairs for any damage identified in WDI Report will be made at Seller's expense and Seller will provide written evidence of such treatment and/or repair prior to date of Settlement which will satisfy the requirements of this Paragraph. Unless the Parties otherwise agree in writing, all treatment and/or repairs are to be performed by a contractor licensed to do the type of work required. Page 7 of 11

**17. HOME WARRANTY.** ☐ **Yes OR** ☒ **No**. Home Warranty Policy selected by: ☐ **Buyer OR** ☐ **Seller** and paid for and provided at Settlement by: ☐ **Buyer OR** ☐ **Seller**. Cost not to exceed $__________. Warranty provider to be ______________________________.

**18. DAMAGE OR LOSS.** The risk of damage or loss to Property by fire, act of God, or other casualty remains with Seller until Settlement.

**19. TITLE.** Buyer will promptly order a title report, as well as any required or desired survey. Fee simple title to Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by Buyer. Seller will convey title that is good, marketable and insurable with no additional risk premium to Buyer or non-standard exceptions. In case action is required to perfect the title, such action must be taken promptly by Seller at Seller's expense. Title may be subject to easements, covenants, conditions and restrictions of record, if any, as of Date of Ratification.
HJGT Special Seller will convey P~~roperty~~ by general war~~ranty deed with English cove~~nants of title ("Deed"). The manner of taking title may have significant legal and tax consequences. Buyer is
AMM advised to seek the appropriate professional advice concerning the manner of taking title. Parties will provide such information, sign and deliver such affidavits, lien waivers, tax certifications, and other documents as may be required by the lender, title insurance company, Settlement Agent, or
ME government authority, all as necessary to complete settlement and insure title and authorize Settlement Agent to obtain payoff or assumption information from any existing lenders. Seller will pay any special assessments and will comply with all orders or notices of violations of any county or local authority, condominium unit owners' association, homeowners' or property owners' association or actions in any court on account thereof, against or affecting Property on Settlement Date. Broker is hereby expressly released from all liability for damages by reason of any defect in the title.

**20. NOTICE OF POSSIBLE FILING OF MECHANICS' LIEN.** Code of Virginia §43-1 *et seq*. permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against Property. This lien may be filed at any time after the work is commenced or the material is furnished, but not later than the earlier of (i) 90 Days from the last day of the month in which the lienor last performed work or furnished materials; or (ii) 90 Days from the time the construction, removal, repair or improvement is terminated. AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.

**21. FEES.** Seller will pay for Deed preparation, costs to release any existing encumbrances, Grantor's tax, as well as any Regional Congestion Relief Fee and Regional WMATA Capital Fee (applicable

in Alexandria City, Arlington, Fairfax, Loudoun and Prince William Counties and all cities contained within). Buyer will pay for the title exam, survey, and recording charges for Deed and any purchase money trusts. Third-party fees charged to Buyer and/or Seller, including but not limited to, legal fees and Settlement Agent fees, will be reasonable and customary for the jurisdiction in which Property is located.

**22. BROKER COMPENSATION.** Parties irrevocably instruct Settlement Agent to pay Broker compensation at Settlement as set forth in Parties' respective brokerage representation agreements.

**23. ADJUSTMENTS.**

A. Rents, taxes, water and sewer charges, condominium unit owners' association, homeowners' and/or property owners' association regular periodic assessments (if any) and any other operating charges, are to be adjusted to the Date of Settlement. Taxes, general and special, are to be adjusted according to the most recent property tax bill(s) for Property issued prior to Settlement Date, except that recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by Seller or allowance made at Settlement. If a loan is assumed, interest will be adjusted to the Settlement Date.

B. In the event Property is currently enrolled in a land use assessment program pursuant to Virginia Code §58.1-3230, *et seq*. and if, by the actions of Seller, Property is deemed unqualified for such program, Seller will be liable for the rollback taxes. Seller will not be liable for the payment of rollback taxes at or after Settlement if (i) Buyer fails to continue Property in the program, and/or (ii) within the timeframe(s) required by the local regulatory authority, Buyer fails to timely renew or revalidate Property in the program.

**24. ATTORNEY'S FEES.**

A. If any Party breaches Contract and a non-breaching Party retains legal counsel to enforce its rights hereunder, the non-breaching Party will be entitled to recover against the breaching Party, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under Contract, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto. Should any tribunal of competent jurisdiction determine that more than one party to the dispute has breached Contract, then all such breaching Parties will bear their own costs, unless the tribunal determines that one or more parties is a "Substantially Prevailing Party," in which case any such Substantially Prevailing Party will be entitled to recover from any of the breaching parties, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto.

B. In the event a dispute arises resulting in the Broker (as used in this paragraph to include any agent, licensee, or employee of Broker) being made a party to any litigation by Buyer or by Seller, the Parties agree that the Party who brought Broker into litigation will indemnify the Broker for all of its reasonable Legal Expenses incurred, unless the litigation results in a judgment against Broker.

**25. DEFAULT.** If Buyer fails to complete Settlement for any reason other than Default by Seller, Buyer will be in Default and, at the option of Seller, Deposit may be forfeited to Seller as liquidated damages and not as a penalty. In such event, Buyer will be relieved from further liability to Seller. If Seller does not elect to accept Deposit as liquidated damages, Deposit may not be the limit of Buyer's liability in the event of a Default. Buyer and Seller knowingly, freely and voluntarily waive any defense as to the validity of liquidated damages under Contract, including Seller's option to elect liquidated damages or pursue actual damages, or that such liquidated damages are void as penalties or are not reasonably related to actual damages.

If Seller fails to perform or comply with any of the terms and conditions of Contract or fails to complete Settlement for any reason other than Default by Buyer, Seller will be in Default and Buyer will have the right to pursue all legal or equitable remedies, including specific performance and/or damages. If either Buyer or Seller is in Default, then in addition to all other damages, the defaulting party will immediately pay the costs incurred for title examination, Appraisal, survey and Broker compensation in full.

If either Seller or Buyer refuses to execute a release of Deposit ("Release") when requested to do so in writing and a court finds that such party should have executed the Release, the party who so refused to execute the Release will pay the expenses, including, without limitation, reasonable attorney's fees, incurred by the other party in the litigation.

**26. VOID CONTRACT.** If Contract becomes void and of no further force and effect, without Default by either party, both Parties will immediately execute a release directing that Deposit, if any, be refunded in full to Buyer according to the terms of the DEPOSIT paragraph.

**27. DEFINITIONS.**

A. "Ratification" or "ratified" means delivery of the final acceptance in writing by Buyer and Seller of all the terms of Contract to Buyer and Seller, which delivery date will be the "Date of Ratification" (not the date of the expiration or removal of any contingencies). For purposes of determining the Date of Ratification, Ratification can occur anytime between 12:00am and 11:59pm on the delivery date.

B. For the purpose of computing time periods in response to Delivery, the first Day will be the Day following Delivery and the time period will end at 9:00 p.m. on the Day specified.

C. "Day(s)" or "day(s)" means calendar day(s) unless otherwise specified in Contract.

D. "Business Day(s)" means any day that is not a Saturday, Sunday, legal holiday, or day on which the state or federal government office is closed.

E. All references to time of day refer to the Eastern Time Zone of the United States.

F. "Appraisal" means written appraised valuation(s) of Property, conducted by a Virginia-licensed appraiser ("Appraiser").

G. The masculine includes the feminine and the singular includes the plural.

H. "Legal Expenses" means attorney fees, court costs, and litigation expenses, if any, including, but not limited to, expert witness fees and court reporter fees.

I. "Notices" ("Notice," "notice," or "notify") means a unilateral communication from one party to another. All Notices required under Contract will be in writing and will be effective as of Delivery. Written acknowledgment of receipt of Notice is a courtesy but is not a requirement.

J. "Notice Voiding Contract" means NVAR Form K1367 entitled "Notice Voiding Contract". "Notice Removing Financing Contingency" means NVAR Form K1331 entitled "Notice Removing Financing Contingency".

K. "Buyer" and "Purchaser" may be used interchangeably in Contract and any accompanying addenda or notices.

L. "Seller Subsidy" is a payment from Seller towards Buyer's charges (including but not limited to loan origination fees, discount points, buy down or subsidy fees, prepaids or other charges) as allowed by lender(s), if any. Seller Subsidy reduces total proceeds to Seller at Settlement. It is Buyer's responsibility to confirm with any lender(s) that the entire credit provided herein may be utilized. If lender(s) prohibits Seller from the payment of any portion of this credit, then said credit will be reduced to the amount allowed by lender(s).

**28. TIME IS OF THE ESSENCE.** Time is of the essence means that the dates and time frames agreed to by the Parties must be met. Failure to meet stated dates or time frames will result in waiver of contractual rights or will be a Default under the terms of the Contract.

**29. REAL ESTATE LICENSED PARTIES.** The Parties acknowledge that ________________ is an ☐ active **OR** ☐ inactive licensed real estate agent in ☐ Virginia and/or ☐ Other __________ and is either the ☐ Buyer **OR** ☐ Seller **OR** ☐ is related to one of the Parties in this transaction.

**30. ENTIRE AGREEMENT.** Buyer and Seller should carefully read Contract to be sure that the terms accurately express their agreement. All contracts for the sale of real property, including any changes or addenda, must be in writing to be enforceable. The provisions not satisfied at Settlement will survive the delivery of the deed and will not be merged therein. Contract, unless amended in writing, contains the final and entire agreement of the Parties and will become legally binding upon the Parties and each of their respective heirs, executors, administrators, successors, and permitted assigns upon Ratification of Contract. Parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of Contract will be governed by the laws of the Commonwealth of Virginia, without regard to the application of conflict of laws. Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same instrument. Typewritten or handwritten provisions included in Contract will control all preprinted provisions in conflict.

**31. SEVERABILITY**. In the event any provision in Contract is determined to be unenforceable, the remaining terms and provisions of Contract shall not in any way be affected, impaired, or invalidated thereby. Page 10 of 11

**32. ASSIGNABILITY.** Contract may not be assigned without the written consent of Buyer and Seller. If Buyer and Seller agree in writing to an assignment of Contract, the original parties to Contract remain obligated hereunder until Settlement.

**33. ADDITIONS.** The following forms, if ratified and attached, are made a part of Contract. (This list is not all inclusive of addenda that may need to be attached).

- ☐ Addendum: Sale Contingencies/Clauses
- ☒ Pre-Settlement Occupancy
- ☐ Conventional Financing
- ☒ Escalation Addendum
- ☐ Sale of Property Subject to Lease Addendum
- ☐ FHA Home Inspection Notice
- ☐ Solar Panel Addendum
- ☐ Home Inspection/Radon Testing Contingency
- ☐ Lead-Based Paint Disclosure
- ☐ VA Loan Assumption Addendum
- ☐ Lead-Based Paint Inspection Contingency
- ☐ New Home Sales Addendum
- ☐ Post-Settlement Occupancy
- ☐ Private Well and/or Septic Inspection
- ☒ Residential Property Disclosure Statement
- ☐ VA/FHA/USDA Financing HJGT
- x☐ Other (specify): **Bankruptcy Addenndum**

| **Date of Ratification (see DEFINITIONS)** |
|---|
| 09/16/2026 |

HJGT

**Sale & Commissions are subject to US Bankruptcy Court Approval.Property is sold striclty in "as-is, where-is" condition. Property is being sold by a Bankruptcy Trustee**

**SELLER:** | **BUYER:**

| SELLER | | BUYER | |
|---|---|---|---|
| 09/15/2026 | / H. Jason Gold, Trustee | 09/14/2026 | / Ahmed Mohamed Mostafa (eSign 09/14/26 - 03:41 PM EDT) |
| Date | Signature<br>**H. Jason Gold, Trustee** | Date | Signature<br>**Ahmed Mohamed Mostafa** |
| H. Jason Gold, Trustee, not individually but solely in his capacity as Chapter 7 Trustee in Bankruptcy; In Re; Perry Everett Adler Case No: | / | 09/14/2026 | / Mohamed Elagazy (eSign 09/14/26 - 03:01 PM EDT) |
| Date | Signature | Date | Signature<br>**Mohamed Elagazy** |
| 25-12714-BFK | / | | / |
| Date | Signature | Date | Signature |
| | / | | / |
| Date | Signature | Date | Signature |

********************************************************************************

**For information purposes only:**

Listing Brokerage's Name and Address:
**CENTURY 21 New Millennium**
**6631 Old Dominion DR**
Brokerage Phone #: **(703)556-4222**
Bright MLS Broker Code: **CENT2007**
VA Firm License #: 0226004375 Stephen Karbelk/
Agent Name: **Stephanie A Young**
Agent Email: **stephanie@realmarkets.com**
Stephen@realmarkets.com
Agent Phone #: **(571)223-9775**
MLS Agent ID # **3064904**
VA Agent License #: **665378**
Team Name: Real Markets
Team Business Entity License #: ____________

Buyer's Brokerage's Name and Address:
**Compass**
**1313 14th Street NW**
Brokerage Phone #: **(240)460-4007**
Bright MLS Broker Code: **COMPS1**
VA Firm License #: **0226026083**
Agent Name: **Yasseen Elagazy / Sina Mollaan**
Agent Email: **yasseen.elagazy@compass.com**
Agent Phone #: **(703)909-9939**
MLS Agent ID # **3339357**
VA Agent License #: **0225258206**
Team Name: **Mollan Babbington Group**
Team Business Entity License #: ____________

**© 2026 Northern Virginia Association of REALTORS®, Inc.**

REALTOR®

This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). All rights reserved. This form may only be used by REALTORS® and other members in good standing with NVAR and the National Association of REALTORS®. Reproduction or resale of this form, in whole or in part, or the use of the name NVAR in connection with any other form, is prohibited without prior written consent from NVAR.

EQUAL HOUSING OPPORTUNITY

Department of Professional and Occupational Regulation

Virginia Real Estate Board
http://www.dpor.virginia.gov/Consumers/Disclosure_Forms/

# RESIDENTIAL PROPERTY DISCLOSURE STATEMENT

## REQUIRED NOTICE FOR BUYER TO EXERCISE NECESSARY DUE DILIGENCE

The Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the *Code of Virginia*) governs the information owners must disclose to prospective purchasers of residential real property. Certain residential property transfers are excluded from the requirements (*see* § 55.1-702). Information below found in § 55.1-703:

1. **CONDITION:** The owner(s) of the residential real property makes no representations or warranties as to the condition of the real property or any improvements thereon, or with regard to any covenants and restrictions, or any conveyances of mineral rights, as may be recorded among the land records affecting the real property or any improvements thereon, and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary including obtaining a home inspection, as defined in § 54.1-500, a mold assessment conducted by a business that follows the guidelines provided by the U.S. Environmental Protection Agency, and a residential building energy analysis, as defined in § 54.1-1144, in accordance with the terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.
2. **LOT LINES:** The owner(s) makes no representation with respect to current lot lines or the ability to expand, improve, or add any structures on the property, and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary, including obtaining a property survey and contacting the locality to determine zoning ordinances or lot coverage, height, or setback requirements on the property
3. **ADJACENT PARCELS:** The owner(s) makes no representations with respect to any matters that may pertain to parcels adjacent to the subject parcel, including zoning classification or permitted uses of adjacent parcels, and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary with respect to adjacent parcels in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.
4. **HISTORIC DISTRICT ORDINANCES(S):** The owner(s) makes no representations to any matters that pertain to whether the provisions of any historic district ordinance affect the property and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary with respect to any historic district designated by the locality pursuant to § 15.2-2306, including review of (i) any local ordinance creating such district, (ii) any official map adopted by the locality depicting historic districts, and (iii) any materials available from the locality that explain (a) any requirements to alter, reconstruct, renovate, restore, or demolish buildings or signs in the local historic district and (b) the necessity of any local review board or governing body approvals prior to doing any work on a property located in a local historic district, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.
5. **RESOURCE PROTECTION AREAS:** The owner(s) makes no representations with respect to whether the property contains any resource protection areas established in an ordinance implementing the Chesapeake Bay Preservation Act (§ 62.1-44.15:67 et seq.) adopted by the locality where the property is located pursuant to § 62.1-44.15:74, and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary to determine whether the provisions of any such ordinance affect the property, including review of any official map adopted by the locality depicting resource protection areas, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

6. **SEXUAL OFFENDERS:** The owner(s) makes no representations with respect to information on any sexual offenders registered under Chapter 23 (§ 19.2-387 et seq.) of Title 19.2, and purchasers are advised to exercise whatever due diligence they deem necessary with respect to such information, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

7. **DAM BREAK INUNDATION ZONE(S):** The owner(s) makes no representations with respect to whether the property is within a dam break inundation zone and purchasers are advised to exercise whatever due diligence they deem necessary with respect to whether the property resides within a dam break inundation zone, including a review of any map adopted by the locality depicting dam break inundation zones.

8. **WASTEWATER SYSTEM:** The owner(s) makes no representations with respect to the presence of any wastewater system, including the type or size thereof or associated maintenance responsibilities related thereto, located on the property and purchasers are advised to exercise whatever due diligence they deem necessary to determine the presence of any wastewater system on the property and the costs associated with maintaining, repairing, or inspecting any wastewater system, including any costs or requirements related to the pump-out of septic tanks, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

9. **SOLAR ENERGY COLLECTION DEVICE(S):** The owner(s) makes no representations with respect to any right to install or use solar energy collection devices on the property.

10. **SPECIAL FLOOD HAZARD AREAS:** The owner(s) makes no representations with respect to whether the property is located in one or more special flood hazard areas and purchasers are advised to exercise whatever due diligence they deem necessary, including (i) obtaining a flood certification or mortgage lender determination of whether the property is located in one or more special flood hazard areas, (ii) reviewing any map depicting special flood hazard areas, (iii) contacting the Federal Emergency Management Agency (FEMA) or visiting the website for FEMA's National Flood Insurance Program or for the Virginia Department of Conservation and Recreation's Flood Risk Information System, and (iv) determining whether flood insurance is required, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

11. **CONSERVATION OR OTHER EASEMENTS:** The owner(s) makes no representations with respect to whether the property is subject to one or more conservation or other easements and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

12. **COMMUNITY DEVELOPMENT AUTHORITY:** The owner(s) makes no representations with respect to whether the property is subject to a community development authority approved by a local governing body pursuant to Article 6 (§ 15.2-5152 et seq.) of Chapter 51 of Title 15.2 and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary in accordance with terms and conditions as may be contained in the real estate purchase contract, including determining whether a copy of the resolution or ordinance has been recorded in the land records of the circuit court for the locality in which the community development authority district is located for each tax parcel included in the district pursuant to § 15.2-5157, but in any event, prior to settlement pursuant to such contract.

13. **MARINE CLAYS:** The owner(s) makes no representations with respect to whether the property is located on or near deposits of marine clays (marumsco soils), and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary in accordance with terms and conditions as may be contained in the real estate purchase contract, including consulting public resources regarding local soil conditions and having the soil and structural conditions of the property analyzed by a qualified professional.

14. **RADON GAS:** The owner(s) makes no representations with respect to whether the property is located in a locality classified as Zone 1 or Zone 2 by the U.S. Environmental Protection Agency's (EPA) Map of Radon Zones, and purchasers are advised to exercise whatever due diligence they deem necessary to determine whether the property is located in such a zone, including (i) reviewing the EPA's Map of Radon Zones or visiting the EPA's radon information website; (ii) visiting the Virginia Department of Health's Indoor Radon Program website; (iii) visiting the National Radon Proficiency Program's website; (iv) visiting the National Radon Safety Board's website that lists the Board's certified contractors; and (v) ordering a radon inspection, in accordance with the terms and conditions as may be contained in the real estate purchase contract, but in any event prior to settlement pursuant to such contract.

15. **DEFECTIVE DRYWALL:** The owner(s) makes no representations with respect to the existence of defective drywall on the property, and purchasers are advised to exercise whatever due diligence they deem necessary to determine whether there is defective drywall on the property, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event prior to settlement pursuant to such contract. For purposes of this disclosure, "defective drywall" means the same as that term is defined in § 36-156.1.

16. **LEAD PIPES:** The owner(s) makes no representations with respect to whether the property contains any pipe, pipe or plumbing fitting, fixture, solder, or flux that does not meet the federal Safe Drinking Water Act definition of "lead free" pursuant to 42 U.S.C § 300g-6, and purchasers are advised to exercise whatever due diligence they deem necessary to determine whether the property contains any pipe, pipe or plumbing fitting, fixture, solder, or flux that does not meet the federal Safe Drinking Water Act definition of "lead free," in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event prior to settlement pursuant to such contract.

17. **IMPOUNDING STRUCTURES OR DAMS:** The owner(s) makes no representations with respect to the condition or regulatory status of any impounding structure or dam on the property or under the ownership of the common interest community that the owner of the property is required to join, and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary to determine the condition, regulatory status, cost of required maintenance and operation, or other relevant information pertaining to the impounding structure or dam, including contacting the Department of Conservation and Recreation or a licensed professional engineer.

18. **AIRCRAFT NOISE:** The owner makes no representations or warranties with respect to the property's proximity to a public use airport nor any noise from aircraft due to the proximity of the property to flight operations. The Federal Aviation Administration is responsible for managing the national airspace system, including aircraft flight paths. Purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary to determine whether a property is within proximity to a flight path or public use airport aircraft noise zone, including contacting (i) the locality or public use airport and reviewing any available maps depicting public use airport aircraft noise zones or (ii) the Department of Aviation or visiting the Department of Aviation's website, where any such maps, if made available by localities or public use airports, shall be accessible to the public (Department of Aviation Website: https://doav.virginia.gov/ noise_contours/).

**19. MILITARY GROUND INSTALLATION:** The owner makes no representations with respect to the property's proximity to any military ground installation, including whether the property may be impacted by related noise or other effects of military operations. Purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary to determine whether the property may be adversely impacted.

# ADDITIONAL WRITTEN DISCLOSURE REQUIREMENTS

## SELLERS AND BUYERS MAY NEED TO COMPLETE ONE OR MORE OF THE FOLLOWING WRITTEN DISCLOSURES

**NOTE:** This information is provided as a resource and does not constitute legal advice. The applicable Virginia Code sections should be consulted before taking any action based on this information, which is intended solely to provide an abridged overview of disclosure requirements and may not be applicable to all transactions.

The entire *Code of Virginia* is accessible online and searchable at http://law.lis.virginia.gov/vacode. You should retain the services of an attorney if you need legal advice or representation.

**FIRST SALE OF A DWELLING:** § 55.1-702.B contains other disclosure requirements for transfers involving the first sale of a dwelling because the first sale of a dwelling is exempt from the disclosure requirements listed above. The builder of a new dwelling shall disclose in writing to the purchaser thereof all known material defects which would constitute a violation of any applicable building code.

**PLANNING DISTRICT 15:** In addition, for property that is located wholly or partially in any locality comprising Planning District 15, the builder or owner (if the builder is not the owner of the property) shall disclose in writing any knowledge of (i) whether mining operations have previously been conducted on the property or (ii) the presence of any abandoned mines, shafts, or pits. If no defects are known by the builder to exist, no written disclosure is required by this subsection.

**SECTION 55.1-703** contains a disclosure requirement for properties located in proximity to any ***military ground installation***.

**SECTION 55.1-704** contains a disclosure requirement for properties in any locality in which there is a ***military air installation***.

**SECTION 55.1-706** contains a disclosure requirement for properties with ***pending building code or zoning ordinance violations***.

**SECTION 55.1-706.1** contains a disclosure requirement for properties with ***lis pendens filed.***

**SECTION 55.1-708** contains a disclosure requirement for ***properties previously used to manufacture methamphetamine***.

**SECTION 55.1-708.1** contains a disclosure requirement for properties with ***privately owned stormwater management facilities***.

**SECTION 32.1-164.1:1** contains a disclosure requirement regarding the validity of ***septic system operating permits***.

***See also*** the *Virginia Condominium Act* (§ 55.1-1900 et seq.), the *Virginia Real Estate Cooperative Act* (§ 55.1-2100 et seq.), and the *Virginia Property Owners' Association Act* (§ 55.1-1800 et seq.).

COMPASS

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

To: Ahmed Mohamed Mostafa, Mohamed Elagazy From: Compass

Property: 6528 Cavalier Dr, Alexandria, VA 22307 Date:

This is to give you notice that Compass, Inc. and its affiliated brokerages ("Compass"),[1] have a business relationship with the providers listed on this disclosure form, and each may refer to you the services of another. Specifically, Compass, Inc. indirectly owns 100% of KVS Title LLC, 100% of Secured Land Transfers LLC d/b/a Mid-Atlantic Settlement Services, 49.9% of OriginPoint LLC, 49.9% of Guaranteed Rate Affinity LLC, 100% of Anywhere Insurance Agency, Inc., and 1.65% of Notarize, Inc.

Because of these relationships, the referral of a customer (including you) by any of these entities to another may provide the referring entity and/or its affiliates or employees with a financial or other benefit.

Set forth below is the estimated charge or range of charges for the services listed. You are NOT required to use the listed provider(s) as a condition for settlement of your loan on or purchase, sale or refinance of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| Provider | Service | Estimated Charge or Range of Charges |
|---|---|---|
| **KVS Title LLC, Secured Land Transfers LLC d/b/a Mid-Atlantic Settlement Services** | **Title Insurance & Closing/ Settlement** | **Maryland**:<br>**Sales Price Owner's Policy***<br>$100,000 $921.00<br>$300,000 $2,165.50<br>$500,000 $3,267.50<br>$1,000,000 $5,632.50<br>$1,500,000 $7,497.50<br>$3,000,000 $13,092.50<br><br>*Simultaneously issued Lender's Policy Included. Closing fee $795-$1,250. Typical endorsements $0-$55. Additional fees $300-$1,350. CHARGES ARE ESTIMATES AND MAY VARY. Other charges may apply; contact your representative for more information.<br><br>**District of Columbia**:<br>**Sales Price Owner's Policy***<br>$100,000 $884.00<br>$300,000 $2,166.00<br>$500,000 $3,390.00<br>$1,000,000 $6,090.00<br>$1,500,000 $8,430.00<br>$3,000,000 $15,450.00<br><br>*Simultaneously issued Lender's Policy Included. Closing fee $1,040-$1,300. Typical endorsements $0-$50. Additional fees $300-$705. CHARGES ARE ESTIMATES AND MAY VARY. Other charges may apply; contact your representative for more information. |

[1] Compass-affiliated brokerages generally use names or trade names which include the word "Compass."

COMPASS

| | | |
|---|---|---|
| | | **Virginia**:<br>**Sales Price Owner's Policy***<br>$100,000 $717.00<br>$300,000 $1,737.50<br>$500,000 $2,717.50<br>$1,000,000 $4,967.50<br>$1,500,000 $6,452.50<br>$3,000,000 $10,587.50<br><br>*Simultaneously issued Lender's Policy included. Closing fee $825-$1,300. Typical endorsements $0-$35. Additional fees $225-$770. CHARGES ARE ESTIMATES AND MAY VARY. Other charges may apply; contact your representative for more information. |
| **OriginPoint LLC; Guaranteed Rate Affinity LLC** | **Loan Products and Services** | Origination Fees (Application, Commitment, Lender, Processing, Origination): $1,640.00<br>Discount Fee/Points: 0 – 3% of loan amount.<br>Additional third-party fees may apply. |
| **Anywhere Insurance Agency, Inc.** | **Homeowner's Insurance** | $2.00 - $8.00 per thousand dollars of replacement cost of dwelling. Pricing will vary based on specific risk profile. |
| **Notarize, Inc.** | **Notary** | $25-$100 |

In addition to the relationships described above, Compass affiliates have a business arrangement with Assurant Home Warranty ("Assurant"). While these affiliates do not have any ownership interest in Assurant, they may receive fees from Assurant in return for their performance of services.

**ACKNOWLEDGEMENT**

I/we have read this disclosure form, and understand that Compass and the providers listed on this disclosure form may refer me/us to purchase the above-described service(s) from one another, and that any such referrals may provide the referring entity and/or its affiliates or employees with a financial or other benefit as the result of any such referral.

eSign Ahmed Mohamed Mostafa 09/14/26 - 03:41 PM EDT — 09/14/2026
Buyer's Signature — Date

eSign Mohamed Elagazy 09/14/26 - 03:01 PM EDT — 09/14/2026
Buyer's Signature — Date

H. Jason Gold, Trustee — 09/15/2026
Seller's Signature — Date
H. Jason Gold, Trustee, not individually but solely in his capacity as Chapter 7 Trustee in Bankruptcy; In Re; Perry Everett Adler Case No: 25-12714-BFK

Seller's Signature — Date

Thank you for your interest in **<u>6528 Cavalier Dr, Alexandria, VA 22307</u>**. We are selling this property on behalf of a court-appointed bankruptcy trustee. To assist you in preparing a contract, we provide the following documents:

1. BrightMLS Client Full Listing
2. BrightMLS Tax Record
3. Bankruptcy Addendum to Sales Contract
4. Residential Property Disclosure Statement
5. Lead-Based Paint Disclosure Statement
6. Affiliated Business Arrangement Disclosure Statement
7. “As Is” NVAR Contingencies / Clauses Addendum
8. List of utilities and appliances which will convey

- Seller is **<u>H. Jason Gold, Trustee</u>**. Do not list the owner shown on the tax record as the seller.

- Our team of experienced agents handles these legal sales as our regular daily business. We can explain the documents, timelines, and processes to help guide you to a successful settlement. We generally anticipate:
  - **a few days** - the trustee will ratify the offer with the best overall terms, expect some minor bankruptcy-specific edits
  - **3-4 weeks** - to get sale motion hearing scheduled with the bankruptcy court
  - **20 days** - Settlement must occur within 20 days after receipt of written court approval

- All buyer(s) names must be correctly spelled and included on the offer. The buyer name(s) will be used for court orders so there can be no substitutions, additions, or assignments prior to closing.

- Buyers are strongly encouraged to use seller’s preferred title company, **RL Title & Escrow in Vienna, VA** (<u>www.rltitleandescrow.com</u>). They handle bankruptcy closings extremely well. They have completed a title search on the Property and are instrumental in helping us conduct a successful transaction. The buyer’s choice of title company will be a material term in the seller’s consideration of your offer.

- Include the **Bankruptcy Addendum** and **NVAR Contingencies/Clauses Addendum** with your offer. This contract requires bankruptcy court approval and is being sold in “As Is” condition.

- Include a lender **Pre-Approval Letter** (if applicable) and copy of the **Earnest Money Deposit** check. EMD must be deposited at time of contact ratification and not after bankruptcy court approval. The terms of the pre-approval letter must match the terms of the offer (buyer’s name(s), purchase price, loan amount, down payment, etc.) and reflect a current date.

- Submit your complete offer via email to Stephanie Young using email **<u>stephanie@realmarkets.com</u>**.

If you have any questions relating to status or contracts, please contact **Stephanie Young** with RealMarkets, a CENTURY 21 New Millennium Team, at 571-223-9775 or stephanie@realmarkets.com.

We look forward to working with you!

Sincerely,

Stephen Karbelk
Team Leader, RealMarkets, a CENTURY 21 New Millennium Team
571-481-1037 or stephen@realmarkets.com

## Frequently Asked Questions (FAQs) about Bankruptcy Listings

**How does a bankruptcy listing differ from a foreclosure sale?**
When a homeowner declares bankruptcy, they become a "debtor". The US Trustee's Office appoints a Chapter 7 trustee to oversee the administration and sale of the debtor's assets to create funds to pay the secured and unsecured creditors. The trustee hires real estate agents to list and sell the property. The trustee reviews and signs the best offer presented, then requests bankruptcy court approval of the sale.

- Homes are, or were recently, occupied by the homeowner, so the properties are generally in average condition.
- Typical inspections (home inspection, radon test, well and septic inspections) and contingencies (financing, appraisal, HOA/condo docs) on contracts are allowed, and homes are delivered vacant at closing.
- The purchaser can be represented by a licensed real estate agent.

A foreclosure is a legal process whereby a secured creditor offers a property for sale through an auction on the courthouse steps, and the lender, via a substitute trustee, signs a contract directly with a new buyer.

- No showings are allowed, no inspections are allowed, and no contract contingencies are allowed.
- Homes are often delivered occupied, requiring the buyer to evict the borrower that defaulted on their mortgage or a tenant.
- Any liens or judgments senior to the foreclosing loan are attach to the property and may become the full responsibility of the buyer.

**Will a bankruptcy property be delivered "free and clear" so I can get title insurance?** Yes. A title search been completed, and any liens, judgments, or encumbrances recorded against the property will be satisfied and released at settlement. When the bankruptcy court approves the sale, the judge will sign an order approving the sale as "free and clear" of any prior liens. The Trustee's preferred title company, RL Title & Escrow, will also offer title insurance to the buyers. If you have for RL Title, please contact Amir Raminpour, Esq., 703-942-6464 and araminpour@swsrlaw.com . RL Title are experts in closing bankruptcy transactions.

**What about any outstanding or delinquent real estate taxes, HOA, or condo dues?** All real estate taxes will be paid in full up to the date of closing. No past due HOA or condo dues will be passed on to the buyer. The buyers' responsibility for property taxes, HOA, and/or condo dues begins as of the settlement date, just like any other real estate transaction.

**Is the property really sold "As Is"?** Yes. Neither the trustee nor the homeowner will pay for any repairs or improvements, including termite damage or HOA/condo exterior architectural violations. The homeowner will do their best to remove their belongings when vacating, but there may be leftover trash and personal property remaining in the home at settlement. We will have written notice from the homeowners that anything left in the home is legally "abandoned" and the buyers will be responsible for disposing of any unwanted contents.

**Are there any known code violations, open permits, or county notices?** Usually, we do not know but if we do know of any, we'll disclose it. Buyers are encouraged to contact the county and conduct their own due diligence. Many counties have online portals where you can check for outstanding code violations.

**What is the trustee looking for?** The trustee reviews offers the same way any seller would; by considering all the contract terms including sales price, closing cost credit, buyer broker commission, financing vs. cash, type of financing, amount of down payment, reputation of lender, strength of lender letter, inclusion of any inspections/contingencies, choice of title company (RL Title is preferred), etc. The winning offer will be the one with the best overall balance of high net price with the strongest probability of a successful closing.

**What should we use for the Settlement Date on the contract?** 45 days in the future is fine, but we will edit that field by adding, "Or within 20 days of Bankruptcy Court approval" when we send it back to you for initials.

**How quickly will the contract be ratified?** The trustee will ratify the offer with the best overall terms within a few days. Expect some minor bankruptcy-specific edits like special warranty deed vs. general warranty deed, and some paragraphs regarding condition will be struck through. The ratification process will go more quickly if your offer includes the disclosures and addenda provided in the Offer Instructions.

eSign ID: 6edeb39c-7221-4c78-9842-030afc8e86352965bf69-989e-4b54-9aaa-fc477b786aaf
DigiSign Verified - 78db6cda-d87e-4cd9-b400-a6f75cf92797


**How quickly will the bankruptcy court approve the sale?** Once we have a ratified contract, the trustee will schedule a court hearing to approve the sale. Those are held every two weeks, but with a mandatory 21-day advance notice period required, and subject to holidays and judge's personal schedules. Therefore, we can't always get on the next upcoming hearing date, it might have to be the one following. We generally anticipate:

- **3-4 weeks** - Sale motion hearing with the bankruptcy court.
- **< 20 days** - Settlement must occur within 20 days after receipt of written court approval.

**Do we need to attend the sale hearing?** Generally, no, but the hearings are public and anyone is welcome to attend. Attendance isn't needed UNLESS there is a competing bid, which usually doesn't happen but it can. If a higher and better offer comes in prior to the hearing and the trustee believes it is worth presenting to the court, our team will notify you so you can plan on attending the hearing. You and your buyers should plan to attend and bid in the courtroom at the hearing. Make sure you have read the Bankruptcy Addendum in the Offer Instructions.

**I've never done a bankruptcy transaction before; can you help me?** Our team of experienced agents handles these legal sales as our regular daily business. We believe in open communication and we can do our best to explain the documents, timelines, and processes to help guide you to a successful settlement. You can also consult an attorney with bankruptcy experience at any time.

**BANKRUPTCY ADDENDUM TO SALES CONTRACT**

Dated __________ **09-14-2026**("Contract")

H. Jason Gold, Trustee ("Seller") to
**Ahmed Mohamed Mostafa, Mohamed Elagazy**
________________________________________ ("Buyer") for the property:
________________________________________ ("Property")6528 Cavalier Dr, Alexandria, VA 22307

The provisions of this addendum shall govern notwithstanding any other provision of the Contract.

1. Conveyance will be by SPECIAL WARRANTY OF TITLE.
2. Unless agreed otherwise in the Contract, the property, and any contents being conveyed herewith, is being sold in "AS-IS, WHERE-IS CONDITION." Any personal property remaining after Settlement is deemed abandoned by the Debtor and is the responsibility of the Buyer.
3. The sale of the Property is subject to and expressly contingent upon the approval of the United States Bankruptcy Court, Eastern District of Virginia, Alexandria Division (the "Bankruptcy Court") and entry of an order on the Bankruptcy Court's docket approving the Contract (the "Approval Order"). Once available, the Listing Agent will provide to the Selling Agent or the Buyer a copy of the Sale Motion that seeks approval of this Contract with the Bankruptcy Court (the "Sale Motion"). The Sale Motion, which will include a copy of this Contract, will be filed on the Bankruptcy Court's docket and will be a public document.
4. **This Contract is subject to higher and better offers.** The determination of what constitutes a higher and better offer is in the sole discretion of the Seller, subject to Bankruptcy Court approval. The Listing Agent may continue to market the Property and disclose the Sale Motion to any interested party up until the Court approves this Contract. In the event the Court approves the sale of the Property to another buyer, the Buyer may seek reimbursement of up to Two Thousand Dollars ($2,000.00) for the actual out-of-pocket cost of inspection reports, including appraisal and home inspection, if any, provided that such alternative sale closes (the "Expense Reimbursement"). The Buyer shall provide their receipts to the Listing Agent within three (3) business days of the hearing scheduled on the Sale Motion. The Buyer shall be paid their Expense Reimbursement, if approved by the Bankruptcy Court, at the closing of the sale of the Property. If the Buyer has any questions about the Bankruptcy Court sales process, they are encouraged to seek advice from their own legal counsel.
5. No Dual Agency and No Designated Representation. The Seller does not consent to designated representation. Thus Seller does not allow the Property to be shown to a buyer represented by the Broker through another designated representative associated with the Broker.
6. Closing Costs. Thru the date of closing, the Seller shall pay: (a) pro-rata real estate taxes, (b) property owners association fees, (c) Grantor's Tax, (d) Regional Congestion Relief Fee, (e) brokerage commissions as provided in the Sale Order, and (f) $250.00 for the Settlement Fee due to the title company. All other costs of closing, including any additional fees due to the title company, shall be paid by the Buyer.
7. Title Company Incentive: If the Buyer agrees to have R.L. Title & Escrow of Vienna, Virginia conduct all aspects of the closing, then the Seller will pay an additional $1,000.00 towards Settlement and Closing Fee costs. If the Buyer is getting any other closing cost credit from the Seller, then this credit shall be included in that credit.

This Addendum shall not alter, modify or change in any other represent the Agreement, and except as modified herein, all the terms and provisions of the Agreement are expressly ratified and confirmed and shall remain in full force and effect.

SELLER:

*H. Jason Gold, Trustee*

H. Jason Gold, Chapter 7 Trustee
Not individually, but solely in his capacity
as the Chapter 7 Trustee in Bankruptcy
*In re: Perry Everett Adler, Case # 25-12714-BFK*

Date: ______________________ 09/15/2026

BUYER(S):

eSign
Ahmed Mohamed Mostafa
09/14/26 - 03:41 PM EDT

eSign
Mohamed Elagazy
09/14/26 - 03:01 PM EDT

09/14/2026Date: ______________________

Department of Professional and Occupational Regulation

Virginia Real Estate Board
https://www.dpor.virginia.gov/Consumers/Disclosure_Forms/

# RESIDENTIAL PROPERTY DISCLOSURE STATEMENT

## SELLER AND PURCHASER ACKNOWLEDGEMENT FORM

The Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the *Code of Virginia*) requires the owner of certain residential real property—whenever the property is to be sold or leased with an option to buy—to provide notification to the purchaser of disclosures required by the Act and to advise the purchaser that the disclosures are listed on the Real Estate Board webpage.

Certain transfers of residential property are excluded from this requirement (see § 55.1-702).

**PROPERTY ADDRESS/ LEGAL DESCRIPTION:** 6528 Cavalier Dr, Alexandria, VA 22307

Bucknell Manor LOT 22 BLK E

**The purchaser is advised of the disclosures listed in the RESIDENTIAL PROPERTY DISCLOSURE STATEMENT located on the Real Estate Board webpage at:**
**https://www.dpor.virginia.gov/Consumers/Residential_Property_Disclosures**

---

**The owner(s) hereby provides notification** as required under the Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the *Code of Virginia*) and, if represented by a real estate licensee as provided in § 55.1-712, further acknowledges having been informed of the rights and obligations under the Act.

**This property is being sold by a bankruptcy trustee. Pursuant to Virginia Code § 55.1-702(A)(1), transfers by a trustee in bankruptcy are exempt from the Virginia Residential Property Disclosure Act. No disclosure statement is required.**

Owner H. Jason Gold, Trustee　　　　Owner

________________　　　　________________

Date　　　　Date

---

**The purchaser(s) hereby acknowledges receipt of notification** of disclosures as required under the Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the *Code of Virginia*). In addition, if the purchaser is (i) represented by a real estate licensee or (ii) not represented by a real estate licensee but the owner is so represented as provided in § 55.1-712, the purchaser further acknowledges having been informed of the rights and obligations under the Act.

eSign Ahmed Mohamed Mostafa 09/14/26 - 03:41 PM EDT　　　　eSign Mohamed Elagazy 09/14/26 - 03:01 PM EDT

Purchaser　　　　Purchaser

09/14/2026　　　　09/14/2026

Date　　　　Date

# SALE: DISCLOSURE AND ACKNOWLEDGMENT OF INFORMATION ON LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS

For the sale of the Property at: 6528 Cavalier Dr, Alexandria, VA 22307

***Lead Warning Statement***

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

***Seller's Disclosure (initial)***

HJGT / ______ (a) Presence of lead-based paint and/or lead-based paint hazard (check one below):

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

______________________________

______________________________

☑ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

HJGT / ______ (b) Records and Reports available to the seller (check one below):

☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

☑ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

***Purchaser's Acknowledgment (initial)***

AMM / MME (c) Purchaser has (check one below):

☐ Received and had an opportunity to review copies of all information listed above.

☐ Been advised that Seller has no knowledge, information, reports, or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

AMM / MME (d) Purchaser has received the pamphlet *Protect Your Family From Lead in Your Home*.

AMM / MME (e) Purchaser has (check one below):

☐ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards; or

☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

***Sales Associates' Acknowledgments (initial)***

SY / YE (f) Listing and Buyer's Sales Associates are aware of their duty to ensure compliance with 42 U 4852d. These Associates have informed the Seller of the Sellers' obligations under this law as evidenced by Seller and Purchaser having completed this form.

***Certification of Accuracy***

The undersigned have reviewed the information above and certify that to the best of their knowledge the information they have provided is true and accurate.

| **SELLER:** | | **PURCHASER:** | |
|---|---|---|---|
| 08/31/2026 | H. Jason Gold, Trustee | 09/14/2026 | Ahmed Mohamed Mostafa (eSign 09/14/26 - 03:41 PM EDT) |
| Date | Signature | Date | Signature |
| | | 09/14/2026 | Mohamed Elagazy (eSign 09/14/26 - 03:01 PM EDT) |
| Date | Signature | Date | Signature |
| | | | |
| Date | Signature | Date | Signature |
| | | | |
| Date | Signature | Date | Signature |

H. Jason Gold, Trustee, not individually but solely in his capacity as Chapter 7 Trustee in Bankruptcy; In Re; Perry Everett Adler Case No. 25-12714-BFK



Created by Stephanie Young with SkySlope® Forms

08/31/2026 / Stephanie Young Signature of Listing Associate
Date

09/14/2026 / Yasseen Elagazy (eSign 09/14/26 - 02:59 PM EDT) Signature of -Buyer's Associate
Date

© 2026 Northern Virginia Association of REALTORS®, Inc.

REALTOR®

This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). All rights reserved. This form may only be used by REALTORS® and other members in good standing with NVAR and the National Association of REALTORS®. Reproduction or resale of this form, in whole or in part, or the use of the name NVAR in connection with any other form, is prohibited without prior written consent from NVAR.

EQUAL HOUSING OPPORTUNITY

CENTURY 21
New Millennium

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

(Virginia)

To H. Jason Gold, Trustee

From: CENTURY 21 New Millennium

Property: 6528 Cavalier Dr, Alexandria, VA 22307

Date: 8/27/2026

This is to give you notice that CENTURY 21 New Millennium ("Real Estate Broker") has business relationships with Bay County Title, LLC ("BCT") and Bay County Settlements, LLC ("BCS"), which both provide settlement services and title insurance services, and Harbour, LLC ("Harbour"), and Capstone Insurance Group, Inc. ("CIG"), both of which provide homeowners' and flood insurance services. NM Management, II, LLC. ("NM"), which owns Real Estate Broker, is the 100% owner of BCS. NM has an 82% ownership interest in BCT, and Hazelwood Title & Escrow, Inc. ("Hazelwood"), a title insurance agency, has a 18% ownership interest in BCT. NM has a 90% ownership interest in Harbour and a private individual has a 10% ownership in Harbour. NM has a referral relationship with CIG. Because of these relationships, Real Estate Broker's referral of business to BCT, BCS, Harbour and/or CIG may provide Real Estate Broker, NM, and/or their employees or affiliates a financial or other benefit. BCT, BCS,Harbour and CIG are together referred to as “Listed Providers”.

In addition, in connection with the purchase or sale of the above referenced property, you may desire to purchase a home warranty. Be advised that Real Estate Broker has entered into a marketing and advertising arrangement with HSA Home Warranty ("HSA"). While Real Estate Broker has no ownership interest in HSA, Real Estate Broker does receive fees from HSA for its marketing and advertising services.

Furthermore, if you are purchasing a property, you may desire to obtain a mortgage loan. Be advised that Real Estate Broker has entered into a marketing and advertising arrangement with Select Lending Services, LLC (“SLS”). While Real Estate Broker has no ownership interest in SLS, Real Estate Broker does receive fees from SLS for its marketing and advertising services.

Set forth below are the estimated charges or range of charges for the mortgage and settlement services listed. You are NOT required to use the Listed Provider, SLS or HSA, as a condition of the purchase or sale of your property. THERE ARE FREQUENTLY OTHER MORTGAGE AND SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

CENTURY 21
New Millennium

| Provider | Settlement Services | Charge/Range of Charges | |
|---|---|---|---|
| Select Lending Services, LLC | *Loan Origination Fee* | 0 -1% of loan amount | |
| | *Loan Discount Fee / Points* | 0 -3% of loan amount | |
| | *Administrative Fee* | $750-$925 | |
| | *Processing Fee* | $600-$725 | |
| | | | |
| HSA Home Warranty | *Home Warranty Service* | $490-$755 | |
| | | | |
| Bay County Settlements, LLC Bay County Title, LLC | *Title Insurance* | Rates per $1,000 of coverage | |
| | | First $250,000 | $4.10 -$4.92 |
| | | $250,001 -$500,000 | $3.89 -$4.67 |
| | | $500,001 -$1,000,000 | $3.57 -$4.24 |
| | | $1,000,001 -$2,000,000 | $2.37 -$2.83 |
| | | $2,000,001 -$5,000,000 | $2.10 -$2.52 |
| | | Over $5,000,000 | Call Company for Quote |
| | | Simultaneous Issue Rate | $200 |
| | | | |
| Bay County Settlements, LLC Bay County Title, LLC | *Binder Fee* | $75 -$115 | |
| | *Settlement Fee* | $495 -$725 | |
| | *Title Examination Fee* | $125 -$250 | |
| | *Delivery I Copies* | $75 -$145 | |
| | | | |
| Harbour, LLC<br><br>Capstone Insurance Group, Inc. | *Homeowner's Insurance, Flood Insurance*<br>*Other Personal Insurance Products* | *The cost of homeowners insurance, flood insurance, andlor personal insurance products varies depending on several factors, including but not limited to: size, value, and age of the structures, geographical location, construction type, value of contents, intended use, and credit scores.* | |

CENTURY 21
New Millennium

## ACKNOWLEDGMENT

I/we have read this disclosure form, understand that Real Estate Broker is referring me/us to purchase the above-described settlement service(s) and that Real Estate Broker, NM, their employees and/or affiliates may receive a financial or other benefit as a result of this referral, and understand that Real Estate Broker receives a fee for performing marketing and advertising services for HSA and SLS.

H. Jason Gold, Trustee — 08/31/2026
Buyer's or Seller's Signature — Date

H. Jason Gold, Trustee, not individually but solely in his capacity as Chapter 7 Trustee in Bankruptcy; In Re; Perry Everett Adler Case No. 25-12714-BFK

Buyer's or Seller's Signature — Date

eSign Ahmed Mohamed Mostafa 09/14/26 - 03:41 PM EDT — 09/14/2026
Buyer's or Seller's Signature — Date

eSign Mohamed Elagazy 09/14/26 - 03:01 PM EDT — 09/14/2026
Buyer's or Seller's Signature — Date

# CONTINGENCIES/CLAUSES ADDENDUM

***This form may only be used by REALTORS® and others as authorized by NVAR. All other use is prohibited.***

This Addendum is made on **09-14-2026**, to a sales contract ("Contract") offered on **09-14-2026**, between **Ahmed Mohamed Mostafa, Mohamed Elagazy** ("Buyer") and **H. Jason Gold, Trustee** ("Seller") for the purchase and sale of Property: **6528 Cavalier Dr Alexandria VA 22307**

The following provisions if initialed by the parties are incorporated into and made a part of this Contract:

## 1. CONTINGENCIES

**A. SALE OF BUYER'S PROPERTY AND KICK-OUT** This Contract is contingent until 9 p.m. days after Date of Ratification ("Deadline") upon the sale of Buyer's property located at ______________________ ("Buyer's Property"). If Buyer does not satisfy, amend or remove this contingency by the Deadline pursuant to sub-paragraph 3 below, this Contract will become void.

1) Seller may continue to offer Property for sale and accept bona fide back-up offers to this Contract until this contingency is satisfied or removed. If a back-up offer is accepted, Seller will Deliver Notice to Buyer requiring that this contingency be removed or satisfied pursuant to sub-paragraph 3 below not later than 9 p.m. ________ days after Delivery of Notice or this Contract will become void. If Buyer fails to satisfy or remove the contingency by Deadline, this Contract will become void.

2) Buyer's Property will be listed exclusively and actively marketed by a licensed real estate broker and entered into a multiple listing service in Active Status within __________ days after the Date of Ratification at a price not to exceed $ ____________.

3) Buyer may:
   a. Satisfy this contingency by Delivering to Seller a copy of the ratified contract for the sale of Buyer's Property with evidence that all contingencies, other than financing and appraisal, have been removed or waived by Deadline **OR**
   b. Remove this contingency by Delivering to Seller (1) a letter from the lender stating that the financing is not contingent in any manner upon the sale and settlement of any real estate or obtaining a lease of any real estate and that Buyer has sufficient funds available for the down payment and closing costs necessary to complete Settlement; **OR** (2) evidence of sufficient funds available to complete Settlement without obtaining financing.

4) If Buyer satisfies the requirements of sub-paragraph 3.a. above, this Contract will remain contingent upon the settlement of the sale of Buyer's Property. This paragraph will survive the satisfaction of the contingency for the sale of Buyer's Property. Settlement (under this Contract) may not be delayed more than _______ Days after the Settlement Date (specified in this Contract) without the parties' written consent. Seller ☐ will **OR** ☐ will not accept an assignment of funds. If a further delay is required to obtain coinciding settlements, Buyer may at Buyer's option declare the Contract void in writing. Nothing herein shall prohibit the parties from mutually



Created by Stephanie Young with SkySlope® Forms

agreeing to extend Settlement Date under terms acceptable by both parties. If at any time after Date of Ratification the contract for the sale of Buyer's Property becomes void, Buyer will immediately Deliver Notice Voiding Contract to Seller together with evidence of such voiding, at which time either Seller or Buyer may declare this Contract void by Delivering Notice Voiding Contract to the other party.

**B. SETTLEMENT OF BUYER'S PROPERTY** Settlement of this Contract is contingent upon the settlement of the contract for the sale of Buyer's property located at __________ ______________________________________________________________ ______________________________ ("Buyer's Property"). Settlement (under this Contract) may not be delayed more than _________ days after Settlement Date (specified in this Contract) without the parties' written consent. Seller ☐ will **OR** ☐ will not accept an assignment of funds. If a further delay is required to obtain coinciding settlements Buyer may at Buyer's option declare the Contract void in writing. Nothing herein shall prohibit the parties from mutually agreeing to extend Settlement Date under terms acceptable by both parties. If at any time after the Date of Ratification the contract for the sale of Buyer's Property becomes void, Buyer will immediately Deliver Notice Voiding Contract to Seller together with evidence of such voiding, at which time either Seller or Buyer may declare this Contract void by Delivering Notice Voiding Contract to the other party.

**C. CONTINGENT ON THE SELLER PURCHASING ANOTHER HOME** This Contract is contingent until 9 p.m. ________ days after Date of Ratification ("Deadline") to allow Seller to ratify a contract for purchase of another home and conduct whatever due diligence Seller deems necessary under the terms of Seller's contract to purchase another home. This contingency will terminate at Deadline and this Contract will remain in full force and effect unless Seller delivers Notice Voiding Contract to Buyer, prior to Deadline, that this Contract is void.

**D. GENERAL** This Contract is contingent until 9 p.m. ______ days after Date of Ratification ("Deadline") upon: ______________________________________
______________________________________________________________
______________________________________________________________
______________________________________________________________
______________________________________________________________

## 2. CLAUSES

**A. BACK-UP CONTRACT** This Contract is first back-up to another contract dated ______ between Seller and ______________________________________________ ________________________________________ as Buyer.

This Contract becomes the primary contract immediately upon Notice from Seller that the other contract is void. All deadlines contained in this Contract shall be measured from ☐Date of Ratification **OR** ☐date this Contract becomes primary. Additionally, Settlement Date will be days after the date this Contract becomes primary. Buyer may void this back-up Contract at any time by Delivering Notice to Seller prior to Delivery of Notice from Seller that this Contract has become the primary contract. If the other contract settles, this Contract will become void. The rights and obligations of the parties under the primary contract are superior to the rights and obligations of the parties to this back-up Contract.

**B. "AS IS" PROPERTY CONDITION** The following terms in this Contract are hereby amended (check all that apply):

- ☑ All clauses pertaining to delivery of Property free and clear of trash and debris and broom clean are deleted.
- ☑ Buyer assumes responsibility for compliance with all laws and regulations regarding smoke detectors.
- ☑ All clauses pertaining to termites and wood-destroying insects are deleted.



- ☑ All clauses pertaining to Seller's compliance with all orders or notices of violation of any county or local authority are deleted.
- ☑ All requirements for Seller to comply with Property Owners' or Condominium Owners' Associations notices of violations related to the physical condition of Property are deleted.

**C. 1031 EXCHANGE (BUYER)** Property is being acquired to complete an IRC Section 1031 tax-deferred exchange pursuant to an exchange agreement. This Settlement will be coordinated with ,________________________________________

______________________________________________

("Intermediary"), who shall instruct Seller as to the manner Property shall be conveyed to Buyer. There shall be no additional expense to Seller as a result of the exchange and Seller shall cooperate with Buyer and Intermediary in the completion of the exchange.

**D. 1031 EXCHANGE (SELLER)** Seller and Buyer agree to transfer Property by utilizing an IRC Section 1031 tax-deferred exchange. Buyer agrees to cooperate with Seller, at no expense or liability to Buyer, in the completion of the exchange, including execution of all necessary documents, the intention of the parties being that Seller utilizes Section 1031 to defer taxes by acquiring like-kind real estate through an exchange agreement established at Settlement. The parties will execute all necessary documents as determined by Intermediary at Settlement, which documents are prepared at Seller's expense.

**E. REAL ESTATE COOPERATIVE** (Virginia Real Estate Cooperative Act § 55.1-2160) Seller ☐has delivered **OR** ☐will deliver to the Buyer the required public offering statement. If the statement was delivered prior to the Date of Ratification then Buyer has 10 days from the Date of Ratification to void this Contract by Delivering Notice Voiding Contract to Seller. If the statement was delivered after the Date of Ratification, then Buyer will have five days from receipt of the statement or Date of Settlement, whichever occurs first, to void the contract by Delivering Notice Voiding Contract to Seller.

**Except as modified by this Addendum, all of the terms and provisions of this Contract are hereby expressly ratified and confirmed and will remain in full force and effect.**

| SELLER: | | BUYER: | |
|---|---|---|---|
| 09/15/2026 / | H. Jason Gold, Trustee | 09/14/2026 / | Ahmed Mohamed Mostafa (eSign 09/14/26 - 03:41 PM EDT) |
| Date | Signature | Date | Signature |
| H. Jason Gold, Trustee, not individually but solely in his capacity as Chapter 7 Trustee in Bankruptcy; In Re; Perry Everett Adler Case No: 25-12714-BFK | | | |
| / | | 09/14/2026 / | Mohamed Elagazy (eSign 09/14/26 - 03:01 PM EDT) |
| Date | Signature | Date | Signature |
| / | | / | |
| Date | Signature | Date | Signature |
| / | | / | |
| Date | Signature | Date | Signature |

REALTOR®

**© 2026 Northern Virginia Association of REALTORS®, Inc.** This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). All rights reserved. This form may only be used by REALTORS® and other members in good standing with NVAR and the National Association of REALTORS®. Reproduction or resale of this form, in whole or in part, or the use of the name NVAR in connection with any other form, is prohibited without prior written consent from NVAR.

EQUAL HOUSING OPPORTUNITY