**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **In re:**<br>**Perry Everett Adler,**<br>**Debtor.** | **Case No. 25-12714-BFK**<br>**Chapter 7 (Converted)** |

**FIRST INTERIM APPLICATION OF ROBERT M. MARINO, ESQ. AND REDMON PEYTON & BRASWELL, LLP FOR COMPENSATION**

Robert M. Marino, Esq. and the law firm of Redmon Peyton & Braswell, LLP (collectively, the "Applicant" or "Counsel"), counsel to H. Jason Gold ("Gold" or "Trustee"), the Chapter 7 Trustee for Perry Everett Adler (the "Debtor"), respectfully files this *First Interim Application* seeking approval of compensation for services rendered to the Trustee and costs incurred from May 26, 2026, through the September 30, 2026, and in support thereof states as follows:

1. Background. On December 29, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, U.S.C. §101 et seq. (the "Bankruptcy Code"), thereby commencing the above-captioned case. By Consent Order entered May 20, 2026 (Docket No. 57), the case was converted to a case under Chapter 7. Gold was appointed as Chapter 7 Trustee in this case on the same date, and continues to serve in that capacity following the conclusion of the meeting of creditors conducted on June 24, 2026. Applicant submitted an *Application* to be employed as counsel to the Trustee in this case on May 26, 2026 (Docket No. 65); by *Order* entered on May 27, 2026 (Docket No. 66), this Court approved the employment of Applicant as counsel for the Trustee.

2. Compensation Requested. As set forth in the detailed Invoice covering the period from May 26, 2026, through September 30, 2026, attached hereto as Exhibit A, the Applicant has incurred a total of $21,850.00 in fees for legal services rendered for and on behalf of the Trustee in this case, and filing fees and postage expenses of $298.77.

Robert M. Marino (VSB #26076)
Redmon Peyton & Braswell, LLP
510 King Street, Suite 301
Alexandria, VA 22314
(703) 879-2676 (Direct)
(703) 684-5109 (fax)
Counsel to H. Jason Gold, Trustee

3. Summary of Timekeeper's Activity. The detailed timekeeper summaries are included in the Invoice which is attached as Exhibit A. The fees represent a total of 46.00 hours of time for Robert M. Marino at the rate of $475/hour, which rate falls within the range of normal hourly rates charged in bankruptcy matters in which he is employed.

4. Other Compensation. There has been no other compensation paid by the Trustee to Applicant.

5. Description of Services Provided by Counsel. Applicant's time during this interim period was primarily directed to the following tasks:

a. *Pre-Conversion and Post-Conversion Personal Property Auctions*. While the case was pending in Chapter 11, the Debtor entered into an agreement with Local Liquidators, LLC ("Auctioneer") to conduct auction sales with respect to numerous items of personal property (the "Personal Property") situated at the Debtor's rural residential real property located at 33425 W. Cowboy Clint Way, Seligman AZ 86337 (the "Seligman Ranch"). The Debtor did not disclose the pendency of the bankruptcy case to the Auctioneer; two auctions (the "Pre-Conversion Auctions") were conducted and completed before the Auctioneer independently learned about the case and ceased further sale efforts. The completed Pre-Conversion Auctions generated net sales proceeds of approximately $120,848 (the "Pre-Conversion Auction Proceeds"). At the Trustee's direction, Counsel communicated with the Auctioneer, reviewed the Pre-Conversion Sales, including the employment agreement executed by the Debtor, and prepared and filed pleadings to ratify the Pre-Conversion Sales, obtain turnover of the Pre-Conversion Auction Proceeds and authorize compensation to the Auctioneer for the Pre-Conversion Sale. At the Trustee's direction, Counsel also (i) reviewed and revised a proposed auction agreement to engage the Auctioneer for the purpose of selling all remaining personal property at the Seligman Ranch (the "Remaining Property") through an online auction sale, private treaty sale, tag sale, or negotiated bulk offer sale, (ii) prepared and filed pleadings to employ the Auctioneer as liquidating agent to sell the Remaining Property, and (iii) prepared and filed pleadings to approve the process for selling the Remaining Property. Following notice and a hearing, the Court granted all requests and entered orders

(i) ratifying the Pre-Conversion Sales, directing that Auctioneer turnover the Pre-Conversion Auction Proceeds and approving payment of compensation to the Auctioneer (Docket No. 131),[1] (ii) authorizing the employment of the Auctioneer (Docket No. 120), and (iii) approving the terms and conditions of the sale of the Remaining Property (Docket No. 132).[2] In connection with these matters, Applicant expended approximately 26.2 hours of attorney time (a total of $12,445 in fees) and performed the following specific tasks—

i. Communicated extensively with representatives of the Auctioneer and counsel for the Debtor for the purpose of obtaining or clarifying background information on the Pre-Conversion Sales and turnover of the Pre-Conversion Auction Proceeds;

ii. Reviewed relevant background information relating to the Pre-Conversion Sales;

iii. Communicated extensively with representatives of the Auctioneer regarding the prospective post-conversion sale of the Remaining Property;

iv. Reviewed and revised proposed liquidating agency agreement prepared by the Auctioneer regarding sale of Remaining Property and communicated with Auctioneer re same;

v. Communicated with Auctioneer for comments on and revisions to all draft pleadings relating to ratification of Pre-Conversion Sales or approval of sale of Remaining Property;

vi. Prepared, revised, filed and served pleadings to employ the Auctioneer to market and sell the Remaining Property;

vii. Prepared, revised, filed and served pleadings to ratify the Pre-Conversion Sales and direct turnover of the Pre-Conversion Auction Proceeds;

viii. Prepared, revised, filed and served pleadings to authorize the terms and conditions for sale of the Remaining Property;

ix. Communicated with Debtor’s counsel re various proposed revisions to terms of order authorizing sale of Remaining Property;

x. Communicated with Office of United States Trustee regarding modification to proposed compensation for Auctioneer re sale of Remaining Property;

xi. Prepared for and attended hearings to consider the motions to ratify the Pre-Conversion Sales and to approve the terms and conditions for the sale of the Remaining Property;

---

[1] The Trustee received the Pre-Conversion Auction Proceeds in October 2026.

[2] The sale of the Remaining Property is expected to occur in late-October or early-November 2026.

xii. Revised and finalized appropriate orders and electronically submitted same for consideration by the Court; and

xiii. Forwarded all entered orders to the Auctioneer for further action consistent with the terms of the orders.

b. *Marketing/Sale of Real Property in Virginia and Arizona*. In addition to the Seligman Ranch, the Debtor also was the record owner of improved residential real property located at 6528 Cavalier Dr, Alexandria, Fairfax County, Virginia 22307-1305 (the "Alexandria Property"). The Alexandria Property is encumbered by two consensual liens, the subordinate of which is held by Amaryllis Inc., the largest creditor in this case. Although there is no equity in the Alexandria Property, Counsel negotiated with Amaryllis' to obtain a carveout payment to the Trustee of $46,000, with all remaining proceeds of sale (net of real estate taxes, costs of sale and full payment to the senior consensual lienholder) to be paid to Amaryllis. Counsel prepared pleadings to engage a real estate agent/broker to market and sell the Alexandria Property. The agent/broker subsequently procured a contract for $575,000 and Counsel prepared and filed pleadings to obtain approval of the sale. A hearing is scheduled for October 20, 2026, the pleadings are unopposed, and the Trustee expects the sale to be approved. Counsel also prepared and filed pleadings to engage a real estate agent/broker to sell the Seligman Ranch. When filed, the pleadings sought to include the Trustee's Virginia real estate agent/broker as a consulting agent/broker, but subsequent instructions from the Trustee resulted in the proposed order being revised to eliminate the consulting agent/broker. Marketing efforts are ongoing. Counsel has variously communicated with counsel for the Debtor to discuss the issues relating to the marketing and sale of both properties, including the timing of Debtor's vacatur and issues relating to piles of tangible personal items that currently fill and clutter the Alexandria Property. Counsel also communicated with a local auctioneer to determine whether the personal property cluttering the Alexandria Property had any value; it was ultimately determined that the personal property had no material sale value. In connection with these real estate matters, Applicant expended approximately 13.3 hours of attorney time (a total of $6,317.50 in fees) and performed the following specific tasks—

i. Prepared, revised, filed and serve pleadings to employ real estate agent to market and sell Alexandria Property and submitted proposed order for entry;

ii. Prepared, revised, filed and serve pleadings to employ real estate agent to market and sell Seligman Ranch;

iii. Revised, finalized and submitted proposed order, with revisions to eliminate Virginia consulting agent/broker and limit employment to Arizona real estate agent;

iv. Communicated with Debtor's counsel re issues relating to proposed marketing and sale of Alexandria Property and sale of Seligman Ranch;

v. Reviewed title bringdown of Alexandria Property to determine validity, priority and extent of encumbering liens;

vi. Communicated with Trustee and local auctioneer regarding possible sale of personal property cluttering the Alexandria Property;

vii. Communicated and negotiated with counsel for Amaryllis regarding terms for short sale of Alexandria Property;

viii. Prepare, revise, file and serve pleadings to approve proposed sale of Alexandria Property;

ix. Communicated with Debtor's counsel re proposed sale of Alexandria Property, disposition of personal property therein;

c. *Lift Stay Matters*. The senior position consensual lienholder on the Alexandria Property filed a lift stay motion seeking relief from the automatic stay to foreclose. Counsel communicated with counsel for the senior lienholder and prepared and filed responsive pleadings to oppose the lift stay motion on the grounds that the Alexandria Property would be marketed and sold and that the senior lienholder would be paid in full from any sale. Counsel subsequently negotiated with counsel for the senior lienholder on the terms of a drop-dead lift stay order that would allow the Trustee to complete his marketing efforts. Counsel also communicated with counsel for the senior lienholder on the status of marketing efforts. As noted above, pleadings were filed in the interim to authorize a sale of the Alexandria Property. Although Counsel reviewed a proposed lift stay order prepared by the senior lienholder, with the intervening pendency of a sale, the senior lienholder determined to delay entry of the order and simply wait for closing on the sale. The sale of the Alexandria Property will render the senior lienholder's lift stay efforts moot. In connection with these lift stay matters, Applicant expended

approximately 4.1 hours of attorney time (a total of $1,947.50 in fees) and performed the following specific tasks—

i. Reviewed lift stay motion filed by senior lienholder on Alexandria Property;

ii. Communicated with counsel for senior lienholder and prepared and filed pleadings in opposition to the pending lift stay motion;

iii. Follow-up communications with counsel for senior lienholder to discuss terms of drop-dead lift stay order, status of marketing efforts, and eventual contract to sell Alexandria Property; and

iv. Reviewed proposed lift stay order drafted by counsel for senior lienholder and follow up communications re same.

d. *General Administration*. Counsel prepared and filed pleadings to employ itself as counsel to the Trustee in this case, participated in the Trustee's communications with counsel for Amaryllis for general background on the case, and generally responded to counsel for Amaryllis' requests for status. Applicant expended approximately 2.4 hours of attorney time (a total of $1,140.00 in fees)

6. Settlement Adjustment. Under the facts of this matter, Applicant believes that it is not appropriate to adjust its fees in this case.

7. Customary Fees. Applicant believes that the requested fees represent the customary and usual fees charged in this District and Division. Applicant's rate of $475.00 per hour for Mr. Marino in this matter is consistent with rates charged in other bankruptcy matters where Applicant is employed. The hourly rate in this case is subject to final approval by the Court, but that rate has been accepted by the Trustee.

8. Sufficient Funds on Hand in Estate. Applicant has spoken with the Trustee and confirmed that the Trustee supports this Application being considered in advance of any final report filed in this case. Indeed, the Trustee has advised Applicant that he has sufficient funds on hand to pay without difficulty all anticipated allowed administrative expenses incurred by Applicant, including the amounts reflected in this Application.

WHEREFORE, Applicant respectfully requests that the Court enter an *Order* (i) allowing and approving Applicant's current request for legal fees in the amount of **$21,850.00** in fees and

reimbursement of expenses of **$298.77**, (ii) authorizing payment of any approved fees and expenses by the Trustee from the estate, and (iii) providing such other and further relief as the Court deems just and proper.

Dated: October 19, 2026

Respectfully submitted,

/s/ Robert M. Marino
Robert M. Marino (VSB #26076)
REDMON, PEYTON & BRASWELL, LLP
510 King Street, Suite 301
Alexandria, VA 22314
(703) 879-2676 (Direct)
(703) 684-5109 (fax)
Counsel to H. Jason Gold, Trustee

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of October, 2026, I caused a copy of the foregoing *Interim Fee Application* to be served by email and through the ECF system to the following persons:

Michael T. Freeman, Assistant United States Trustee
Office of the United States Trustee
Email: Michael.T.Freeman@usdoj.gov

Daniel M. Press
Law Office of Daniel M. Press
Email: dan@danpress.us
Counsel for Debtor

H. Jason Gold, Chapter 7 Trustee
Email: goldtrustee@fiduciaryservicesgroup.com

and to all other creditors and parties in interest who have entered their appearance and receive notice in this case through the ECF filing system.

/s/ Robert M. Marino
Robert M. Marino